Floyd P. Bienstock (006299)
Douglas D. Janicik (021522)
STEPTOE & JOHNSON LLP
201 E. Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
fbienstock@steptoe.com
djanicik@steptoe.com
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

Christopher Carlsen (*Pro Hac Vice*)
CLYDE & CO US LLP – New York, NY
405 Lexington Avenue, 16th Floor
New York, New York 10174
christopher.carlsen@clydeco.us
Telephone: (212) 710-3900
Facsimile: (212) 710-3950

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Bandres Oto and Elisa Lopez-Belio, individually, and on behalf of all eligible beneficiaries of claims arising from the wrongful death of Marina Bandres Lopez-Belio, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Airline Training Center Arizona, Inc.,<br><br>Defendant. | Case No. 2:16-cv-01027-DJH<br><br>DEFENDANT AIRLINE TRAINING CENTER ARIZONA, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT OR, IN THE FURTHER ALTERNATIVE, TO DISMISS ON THE GROUNDS OF *FORUM NON CONVENIENS*<br><br>ORAL ARGUMENT REQUESTED |

## PRELIMINARY STATEMENT

Defendant Airline Training Center Arizona, Inc. ("ATCA") moves to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 or, in the further alternative, to dismiss the Complaint on the grounds of *forum non conveniens*.

## SUMMARY OF ARGUMENT

On March 24, 2015, Andreas Lubitz ("Lubitz"), a 27 year old German commercial airline pilot with a history of depression, deliberately flew a Germanwings jetliner with 150 passengers and crew onboard into a mountain in France. Plaintiffs seeks to hold ATCA liable for this criminal act because, more than four years earlier, ATCA taught Lubitz how to fly a single engine, four-seat airplane at its flight school in Goodyear, Arizona.

The only accurate assertion in plaintiffs' Complaint is that Lubitz completed treatment for depression more than a year before he arrived at ATCA. No support exists for their allegation that ATCA "knew or should have known" about his medical history. And, in any event, that episode of depression is meaningless because it did not disqualify Lubitz from flight training, or from becoming a pilot. Plaintiffs concede that the U.S. Federal Aviation Administration ("FAA") and its German equivalent, the Luftfahrt-Bundesamt ("LBA"), authorized Lubitz to undergo flight training with full knowledge that he had been treated (successfully) for depression. Their allegations in this respect are tantamount to judicial admissions that the depression did not disqualify Lubitz from pilot training.

The French Government's investigation of the crash revealed that Lubitz began to re-experience mental health problems in Germany in December 2014 – *four years after* he left ATCA. No evidence exists that he suffered a recurrence of any mental health issues during the five years between the completion of his treatment in 2009 and December 2014. Plaintiffs improperly attempt to create a link between ATCA and Lubitz' separate 2009 and 2014 depressive episodes with the baseless allegation that Lubitz "exhibited symptoms" of "psychological abnormalities" while he attended ATCA. Plaintiffs do not even attempt to offer a factual predicate for this conclusory allegation.

Plaintiffs also improperly mischaracterize the training provided by ATCA. They refer to ATCA as a "commercial airline training center," as if ATCA taught Lubitz how to fly the jetliner he crashed, and issued his German commercial pilot's license. ATCA provides an eighteen week course in the basic skills needed to fly a small plane. The remainder of Lubitz' extensive multi-year pilot training program was provided by other entities in Germany. Lubitz did not obtain his commercial pilot's license until three years after he left ATCA, and he was not in the cockpit of the Germanwings flight because of the training he received in Arizona. He was there only because he completed a commercial pilot training program in Germany, learned to fly a commercial jetliner, was issued a commercial pilot's license by the German Government, and was hired by a German airline. Plaintiffs cannot establish that ATCA's training proximately caused or allowed Lubitz to commit suicide and kill their decedents. Moreover, plaintiffs cannot even establish that ATCA owed a legal duty to them or their decedents.

In the alternative, the Complaint should be dismissed under the doctrine of *forum non conveniens* in favor of the courts of Germany. Plaintiffs and their decedents are and were not U.S. citizens and have no connection to this Court. And, all of the witnesses and evidence concerning the issues of proximate and superseding cause – crucial elements of ATCA's defense – are located in Germany and beyond the jurisdiction of this Court. ATCA will agree to litigate in the German courts, and will produce in Germany at its own cost all required witnesses and evidence. Moreover, Germanwings, which is subject to German but not U.S. jurisdiction, has agreed not to contest liability for full compensatory damages for the claims in connection with the deaths of plaintiffs' decedents.

**STATEMENT OF FACTS**

On March 24, 2015, during Germanwings Flight No. 4U9525 from Spain to Germany, Lubitz locked his co-pilot out of the cockpit and flew the plane into a mountain. Complaint, ¶¶ 4, 5. Lubitz was suffering from a mental disorder, and was taking psychotropic medication. ATCA's Statement pursuant to LRCiv.56.1, ¶¶ 79-83.

### A. Lubitz' Commercial Pilot Training Program

In September 2008, Lubitz entered a commercial pilot training program operated by Lufthansa Flight Training GmbH ("LFT") in Germany. That program lasted approximately 26 months. *Id*. ¶¶ 4-6. LFT had contracted with ATCA to provide LFT's students a portion of their training – how to fly a small plane. The initial phase of Lubitz' training at LFT involved a year of classroom instruction in Germany. *Id*. ¶¶ 7-12. Shortly after Lubitz started training, he experienced depression and interrupted his training for ten months to seek and complete treatment. His physicians opined that his treatment was successful, and that his depression was in "complete remission." *Id*. ¶¶ 13-15. He then finished his initial training at LFT, completed ATCA's four and one-half month course, and returned to Germany to complete the LFT program. *Id*. ¶¶ 8, 10, 16, 17. ATCA had no further contact with Lubitz after he left Arizona in February 2011. *Id*. ¶ 25.

### B. ATCA did not Know About Lubitz' History of Depression

Lubitz did not "apply" to ATCA, and no contractual relationship existed between Lubitz and ATCA. Lubitz was a student in the LFT training program, and he received instruction at ATCA because LFT hired ATCA to teach him how to fly a small plane. Accordingly, ATCA did not "select" Lubitz to attend its course. *Id*. ¶ 11, 63.

ATCA did not know about Lubitz' depression. No person or entity ever advised ACTA about Lubitz' medical history, and ATCA did not have access to, or any reason to seek, his private medical records. ATCA likewise did not have access to LFT's training records, and so it did not even know that Lubitz had interrupted his training at LFT. *Id*. ¶¶ 19-21, 32, 43, 60, 61, 62, 65, 66, 82.

### C. Lubitz' Depression did not Disqualify Him from Training

Lubitz' history of depression is irrelevant because it did not disqualify him from flight training, or from becoming a commercial pilot. In order to attend ATCA, Lubitz was required by the FAA and the German LBA (and not by ATCA as alleged by plaintiffs) to maintain current and valid medical certificates issued by those entities. The certificates were issued only after a qualified aero-medical examiner determined that Lubitz was medically

qualified to undergo training, and to fly aircraft. Plaintiffs concede that both the FAA and the LBA issued their certificates to Lubitz with full knowledge of his medical history. *Id*. ¶¶ 26-59, and Complaint, ¶¶ 113-119. The LBA also issued Lubitz' commercial pilot's license, and allowed him to fly commercial aircraft, with full knowledge of his medical history. In fact, the LBA re-validated his medical certificate annually for six years before the crash – and each time with full knowledge of his medical history. *Id*. ¶¶ 46-48.

### D. The Notation on Lubitz' German Medical Certificate was Meaningless

The Notation on Lubitz' German medical certificate was meaningless because it did not in any way indicate to ATCA (or anyone else) that he had a history of depression. It simply was a generic reference to the fact that he had unspecified underlying medical condition that needed to be monitored by the AME at each annual renewal of the certificate. And, the very fact that he had the certificate meant that the AME and the LBA knew about his history of depression, and determined that it did not disqualify him from training or flying. *Id*. ¶¶ 36-45.

### E. Lubitz Completed his Training at ATCA Without Incident

No evidence exists that Lubitz experienced a recurrence of his mental health issues while he attended ATCA. No one ever advised ATCA that Lubitz was experiencing any mental health issues, and he never exhibited any behavior, and never engaged in any conduct, that in any way suggested to ATCA that he might be suffering from any form of mental illness. ATCA never questioned Lubitz' mental stability, and never determined or suspected that that he was not fit to operate an aircraft. Lubitz successfully completed his training at ATCA without incident. *Id*. ¶¶ 19-24.

### F. Lubitz' Activity After he Left ATCA

When Lubitz left ACTA, he did not hold a pilot's license and did not know how to fly a jetliner. He knew how to fly a small plane. *Id*. ¶ 67. After leaving ATCA, Lubitz completed the LFT program, passed a final written examination and a "skills test" in which he demonstrated the skills necessary to operate a multi-crew commercial aircraft, and

successfully completed aircraft landing training. He also completed a course of instruction necessary to fly the Airbus 320 Model Aircraft. *Id*. ¶¶ 68-70.

Lubitz was hired by Germanwings in December 2013, and the LBA issued his commercial pilot's license on February 11, 2014 – almost three years after he left ATCA. He underwent an additional six months of training provided by Germanwings where he learned how to fly the aircraft operated by Germanwings. In late June 2014, Lubitz was appointed as a First Officer, and thereafter began flying commercial aircraft for Germanwings as a pilot. *Id*. ¶¶ 71-75. The aircraft operated by Germanwings require two pilots. Accordingly, on every flight operated by Lubitz from the time he became a First Officer to the date of the crash, he was accompanied in the cockpit by another, more senior pilot. During the French Government's post-crash investigation[1], the pilots who flew with Lubitz were interviewed and they all reported that he did not display any behavior to indicate that he was experiencing any mental health issues. *Id*. ¶¶ 76-77.

### G. The Recurrence of Lubitz' Mental Health Issues

In December 2014, almost four years after he left ATCA, Lubitz began to re-experience mental health problems and was prescribed anti-depressant medication. His condition worsened rapidly. On March 10, 2015, two weeks before the crash, his doctor diagnosed a possible psychosis, and recommended that he undergo psychiatric hospital treatment. Lubitz' mental health problems, and his use of medication, made him unfit to operate aircraft, but his condition was not disclosed to anyone. It was known only to Lubitz and his physicians. No evidence exists that Lubitz experienced a recurrence of any of his mental health issues at any time between the end of his initial treatment in Germany in October 2009, and December 2014. *Id*. ¶¶ 78-82.

---

[1] ATCA relies on portions of the French Government's Final Report in this motion. The factual findings in this report are admissible under Fed. R. Evid. 803(8)(A) and (B). *See also Lidle v. Cirrus Design Corp.*, 2010 WL 1644958 (S.D.N.Y. Apr. 22, 2010) (discussing the admissibility of aircraft accident investigation reports prepared by the U.S. National Transportation Safety Board).

# ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Dismissal under Fed. R. Civ. P. 12(b)(6) can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, L.Ed.2d 929 (2007).

To avoid dismissal, the Complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint that presents nothing more than "naked assertions" without "further factual enhancement" will not suffice. *Id.*, at 557. Allegations of material fact normally are assumed to be true. *Cousins v. Lockyear*, 568 F.3d 1063, 1067 (9th Cir. 2009). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)(quotations omitted). "Facts subject to judicial notice[2] may be considered on a motion to dismiss." *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 2011). And, a court "is not required to accept as true allegations contradicted by judicially noticed facts." *Castle v. Eurofresh, Inc.,* 2010 WL 797138, *3 (D. Ariz. Mar. 8, 2010). "[P]leading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D.Ca. Mar. 13, 2012). *See also Vivendi SA v.*

---

[2] Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ATCA maintains that the Court is able to take judicial notice of the documents posted on the FAA's website that are attached as Exhibit "B" to the Declaration of Matthias Kippenberg submitted in support of this motion.

1  *T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009)(finding allegations "upon information and belief" where no further facts were alleged to be insufficient).

### A. Plaintiffs' Claims Improperly are Based on Conclusory Allegations

Plaintiffs' claims are based entirely on two wholly conclusory and unsupported allegations: (1) ATCA negligently "admitted" Lubitz to its flight school when it knew, or should have known, that he had a history of depression and had attempted to conceal that fact from the FAA, and (2) Lubitz suffered a recurrence of his mental health problems while at ATCA that rendered him unfit for flight training, and ATCA negligently failed to stop his training. Complaint, ¶¶ 112-139.

No basis exists for these conclusory and "on information and belief" allegations. First, ATCA does not "select," "screen," "admit," or otherwise determine which students attend ATCA. Lubitz attended ATCA because the LFT hired ATCA to teach him to fly a small plane.

Second, no evidence exists that ATCA knew, or could have known, about Lubitz' medical history or his communications with the FAA or the LBA. And, as plaintiffs concede, the FAA, and the LBA, were fully aware of Lubitz' medical history and yet still authorized him to attend ATCA. The FAA regulates and controls ATCA's operation of its flight school. Plaintiff's allegations that the FAA and the LBA issued to Lubitz the medical certificates required for him to undergo training at ATCA, with knowledge of his history of depression, are tantamount to judicial admissions that his medical history did not disqualify him from receiving the instruction at ATCA. *See* Complaint, ¶¶ 113-119. Accordingly, even if ATCA knew about Lubitz' past depression, it would have been irrelevant.

Similarly, absolutely no evidence exists for the allegation that Lubitz suffered a recurrence of his problems while at ATCA. Plaintiffs do not even bother to offer a factual predicate for this allegation. They simply assert, in a single sentence of their 143 paragraph Complaint, that Lubitz "exhibited … symptoms" of psychological problems. Complaint, ¶ 7.

Plaintiffs' conclusory allegations about Lubitz' mental condition, and ATCA's knowledge of that condition, amount to nothing more than "naked assertions" without

8

"further factual enhancement," and are insufficient to withstand ATCA's motion to dismiss. *Twombly*, 550 U.S. at 557. Accordingly, the Complaint should be dismissed.

**B. ATCA Did Not Owe, or Breach, a Duty to Plaintiffs' Decedents**

Plaintiffs allege a negligence cause of action against ATCA. *See* Complaint, ¶ 6. A negligence action requires proof of four elements: (1) a duty, recognized by the law, requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a reasonably close causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Gipson v. Kasey,* 214 Ariz. 141, 143,150 P.3d 228, 230 (Ariz. 2007).

"Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id*. Whether a duty exists is a matter of law for the court to decide. *Id*. Duty is defined as a legal obligation that requires a defendant "to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Foreseeability is not a factor to be considered by courts when making determinations of duty. *Gipson*, 214 Ariz. at 144, 150 P.3d at 231.

A legal duty "may arise from a special relationship based on contract, family relations, or conduct undertaken by the defendant, or may be based on categorical relationships recognized by the common law, such as landowner-invitee." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, 275 P.3d 632, 635 (App. 2012). Recognized "special relationships" include a parent's duty to control a child, a master's duty to control a servant, a landowner's duty to control a licensee, and the duty of caretakers in charge of individuals with dangerous propensities to control those individuals. *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 473, 323 P.3d 753, 756 (App. 2014).

In the absence of a special relationship, "[p]ublic policy may support the recognition of a duty of care." *Gipson*, 214 Ariz. at 145, 150 P.3d at 232. Arizona courts have recognized duties premised on public policy arising from statutes and the common law. *Id*., 214 Ariz. at 146, 150 P.3d at 233. A statute or regulation typically gives rise to a tort duty

premised on public policy only if it "is designed to protect the class of persons, in which plaintiff is included, against the risk of harm which has in fact occurred as a result of its violation." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994).

No relationship existed between ATCA and Lubitz, or between ATCA and plaintiffs or their decedents, that imposed a duty of care on ATCA. In order for ATCA to "have a duty to control [Lubitz'] conduct, "a special relationship had to exist between them … such as parent-child, master-servant, possessor of land-licensee, or guardian-ward." *Fedie v. Travelodge International, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (App. 1989) (*citing* Restatement (Second) of Torts, §§ 316-319). The only relationship that ever existed between ATCA and Lubitz was that of school and student during the four and one-half months he attended ATCA. That relationship ended when Lubitz returned to Germany, more than four years before the crash. ATCA had no contact with Lubitz, and no authority, ability, or responsibility to control his conduct, at the time of the crash. LRCiv. 56.1 Stmt, ¶ 85.

For ATCA "to have been required to protect … [plaintiff's] decedent[s], a special relationship had to exist between them … such as carrier-passenger, innkeeper-guest, landlord-invitee, guardian-ward, teacher-student, or jailer-prisoner." *Id*. (*citing* Restatement, §§ 314A, 320). No such relationship existed. In fact, no relationship at all ever existed between them.

Plaintiffs do not even allege the existence of a statute or regulation that imposes a legal duty on ATCA. Accordingly, because ATCA did not owe or breach any duty of care to plaintiffs or their decedents, the Complaint should be dismissed.

**C.**     **Plaintiffs Cannot Establish Proximate Cause Against ATCA**

The proximate cause of an injury "is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). "An efficient intervening cause is an independent cause that occurs between the original act or omission and the final harm and is necessary in

bringing about that harm." *Barrett v Harris*, 207 Ariz. 374, 378, 86 P.3d 954, 958 (App. 2004). Intervening causes become superseding causes when the "intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Robertson,* 163 Ariz. at 546, 789 P.2d at 1047. "[A] crime is a superseding cause of harm unless the defendant should have foreseen the crime." *Fedie,* 162 Ariz. at 266, 782 P.2d at 742 (*citing* Restatement § 448). Proximate cause is negated when there is a superseding cause of the alleged harm to the plaintiff. *Id*.

As an initial matter, the mass murder committed by Lubitz four years after he left ATCA was, under any reasonable interpretation, an extraordinary and unforeseeable criminal act and thus constituted a superseding cause of the death of plaintiffs' decedents.

Nothing that ATCA allegedly did or failed to do proximately caused the deaths of plaintiffs' decedents. As demonstrated above, no evidence exists that ATCA knew about Lubitz' medical history. And, as a practical matter, that history is irrelevant to the claim against ATCA because it did not disqualify Lubitz from participating in pilot training. Moreover, no evidence exists that Lubitz experienced any recurrence of his mental health issues while he was at ATCA, or at any time during the more than five years from October 2009 when he completed his treatment, until December 2014, when he began to re-experience his problems.

ATCA's act of teaching Lubitz to fly a small plane did not proximately cause him to become, four years later, "a commercial pilot with recurring psychotic, depressive and suicidal disorders." Complaint, ¶ 140. When Lubitz left ATCA, he had not completed his flight training program, did not have a commercial pilot's license, and did not know how to fly a commercial jetliner. In order to get into the cockpit on March 24, 2015, he was required to complete his flight training, learn how to fly commercial jet aircraft, pass six annual aero-medical exams (administered by AME's who knew of his medical history), obtain his commercial pilot's license, obtain employment with Germanwings, and then for five months fly repeatedly with other pilots without raising any suspicion that he was experiencing mental health issues. No reasonable view of these facts can lead to the

conclusion that ATCA's basic small plane flying instruction proximately caused Lubitz four years later to commit suicide and kill plaintiffs' decedents by deliberately flying into a mountain.

Finally, any question of proximate cause is eliminated by the fact that the German LBA repeatedly renewed Lubitz' medical certification, and issued his commercial pilot's license – with full knowledge of his history of depression. If his medical certificate had not been renewed, or his pilot's license denied or revoked, he could not have operated Flight 4U9525. Accordingly, the LBA's decision to issue Lubitz his commercial pilot's license, and allow him to work as a commercial airline pilot, necessarily negates any possible proximate cause related to ATCA's alleged conduct. *See McCleaf v. State*, 190 Ariz. 167, 172, 945 P.2d 1298, 1303 (App. 1997)("When a responsible actor assumes control of a situation from another … the rule is that the negligence of the initial actor will not be found to be a proximate cause of the harms that befall after the authoritative and effectual decision is made as to the same matter has been made by another person empowered to make it."). The LBA controls the licensing of airline pilots in Germany, and it alone, with full knowledge of Lubitz' history of depression, made the decision to allow Lubitz to fly commercial airplanes.

Accordingly, because plaintiffs cannot establish the requisite element of proximate cause, their Complaint should be dismissed.

## II.    ATCA SHOULD BE GRANTED SUMMARY JUDGMENT

The Court has discretion to consider extrinsic materials and convert a 12(b)(6) motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Davis v HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012). In the event the Court determines that dismissal is not appropriate under Fed. R. Civ. P. 12(b)(6), ATCA requests that it be granted summary judgment based on the undisputed evidence submitted in support of this motion.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2). Only disputes over facts "that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson*, 477 U.S. at 248). The non-movant must come "forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Conclusory allegations, unsupported by factual material, are insufficient to avoid summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Summary judgment is appropriate in this case because, as is established above, absolutely no evidence exists to establish that: (1) ATCA knew about Lubitz' medical history, or (2) that Lubitz experienced any mental health issues while he attended ATCA, or (3) that ATCA was required to deny Lubitz flight training, or (4) that ATCA had or breached any duty to plaintiffs or their decedents, or (5) that anything ATCA allegedly did or failed to do proximately caused the crash of Flight No. 4U9525. Accordingly, because plaintiffs cannot establish their negligence cause of action, the Complaint should be dismissed.

### III. THE COMPLAINT SHOULD BE DISMISSED ON THE GROUNDS OF *FORUM NON CONVENIENS*

In the further alternative, this litigation should be dismissed on the grounds of *forum non conveniens* in favor of the courts of Germany, where the overwhelming majority of events surrounding Lubitz' training, licensing, medical treatment, and employment leading up to the crash occurred.

Under the doctrine of *forum non conveniens*, a district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S. Ct. 839, 91 L.Ed. 1055 (1947). "[I]f the balance of convenience s suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Lueck v. Sunstrand Corporation*, 236 F.3d 1137, 1145 (9th Cir. 2001).

"In dismissing an action on *forum non conveniens* grounds, the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck,* 236 F.3d at 1142 (*citations omitted*). Although there ordinarily is a strong preference in favor of a U.S. plaintiff's choice of forum, "a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981).

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there, and (2) the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corporation*, 643 F.3d 1216, 1225 (9th Cir. 2013). A defendant's voluntary submission to service of process and consent to jurisdiction in the foreign forum "suffices to meet the first requirement for establishing an adequate alterative forum." *Id*. (*citing Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).

The foreign forum offers the plaintiff a satisfactory remedy if its "laws provide potential redress for the injury alleged; the fact that the substantive law may be less favorable is relevant only if it would completely deprive plaintiffs of any remedy or would result in unfair treatment." *Tuazon,* 433 F.3d at 1178. "[T]he requirement that the alternative forum provide 'some remedy' for plaintiff's complained of wrong is 'easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all." *Carijano*, 643 F.3d at 1225 (*citations omitted*).

The private interest factors considered by the court are as follows: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil*, 330 U.S. at 508. The court's focus should not rest on the number of witnesses or the quantity of evidence in each locale. "Rather, a court should evaluate the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum." *Lueck*, at 1146.

Courts consider the following public interest factors: (1) local interest of the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; (5) the costs of resolving a dispute unrelated to this forum. *Piper Aircraft*, 454 U.S. at 259-61.

Germany is an adequate alternative forum in which to litigate plaintiffs' claims. ATCA's agreement to submit voluntarily to the jurisdiction of the German courts as a condition of the *forum non conveniens* dismissal establishes that it is amenable to service of process in Germany. *Carijano,* 643 F.3d at 1225. And, the Declaration of Prof. Dr. Staudinger submitted in support of ATCA's motion establishes that German law provides plaintiffs a cause of action against ATCA for the death of their decedents, and recovery of damages, in the event they prove their claims. Accordingly, Germany will provide plaintiffs a satisfactory remedy for their claims against ATCA. *Tuazon,* 433 F.3d at 1178. *See* LRCiv. 56.1 Stmt., ¶¶ 76-79. Courts repeatedly have held that Germany constitutes an adequate alternative forum for purposes of a *forum non conveniens* dismissal. *See, e.g.*, *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004); *Wellogix, Inc. v. SAP America, Inc.*, 58 F.Supp.3d 766 (S.D. Tex. 2014).

The private interest factors weigh heavily in favor of litigating this case in Germany. Plaintiffs and their decedents are and were citizens and residents of countries other than the U.S. LRCiv. 56.1 Stmt. ¶ 92. They have no connection to this Court, and their choice of forum is entitled to a lessened deference. Moreover, the overwhelming majority of the events which enabled Lubitz to be at the controls of Flight 4U9525, and allegedly lead to his decision to crash the plane, occurred in Germany. Accordingly, all of the witnesses and evidence related to those events are located in Germany – beyond the jurisdiction of this Court.

Lubitz' history of mental health problems leading up to the crash is a central issue involved in plaintiffs' claims, and all of his medical treatment occurred in Germany – and so all of the physicians who treated him, and all of their records, are located in Germany. Similarly, the employees of LFT who provided the bulk of Lubitz' commercial pilot training

(including teaching him how to fly a commercial jet), and who maintained his training records, and who made the decision to graduate him from the LFT course, are located in Germany. The German aero-medical examiners who, six years in a row, examined Lubitz, and with knowledge of his medical history, determined that he was fit to undergo pilot training and to fly commercial passenger aircraft, all are located in Germany. So too are the officials at the LBA who decided to license Lubitz as a commercial pilot, as well as the employees of Germanwings who made the decision to hire Lubitz, who trained him and deemed him fit to fly the A320 aircraft, and the crew members who regularly flew with him in the months leading up to the crash.

Plaintiffs allege that ATCA knew that Lubitz was mentally unstable, that it negligently failed to prevent his training, and that its negligence proximately caused and allowed Lubitz – years later – to get hired by Germanwings and get into the cockpit of Flight No. 4U9525. If plaintiffs' claims against ATCA are allowed to go forward, they will involve significant issues of proximate, intervening and superseding cause, and how ATCA's alleged liability is affected by the acts or omissions of the employees of LFT and Germanwings, Lubitz' physicians, the aero-medical examiners, and the German LBA officials, who interacted with Lubitz during the four-plus years between the date he left ATCA, and the date of the crash. All of these witnesses and their records are located in Germany, and this Court does not have the power to compel them to give evidence in this Court. It would be extremely prejudicial to ATCA to be forced to defend against plaintiff's claims in this Court without access to this evidence that is crucial to its defense.

The public interest factors also favor *forum non conveniens* dismissal of this action because the vast majority of the events related to the subject crash occurred in Germany, and it would be extremely expensive and time consuming for the parties to have to attempt to engage in what would be the required extensive foreign discovery in Germany concerning the events related to the crash.

Because plaintiffs are not citizens or residents of the U.S., the courts of Germany would be no less convenient to them than this Court. And, because ATCA will agreed to

1  make available in Germany, at its expense, all witnesses and evidence that it is required to
2  produce, plaintiffs would not in any way be prejudiced by having the proceedings take place
3  in Germany rather than Arizona. *See* Kippenberg Declaration, ¶ 98.
4        Finally, Germanwings, the operator of Flight No. 4U9525, has agreed not to contest
5  liability for full compensatory damages available under the applicable law in connection with
6  the death of plaintiffs' decedents. *Id*., ¶ 91. Germanwings does not conduct any business
7  operations in the U.S., and so is not subject to jurisdiction in this Court. *Id*., ¶ 84. However,
8  it is subject to jurisdiction in Germany. In the event plaintiffs commence litigation against
9  ATCA in Germany, they presumably would join Germanwings in that litigation, and would
10 be able to avoid the time and expense involved in establishing liability – leaving only the
11 issue of their damages to be litigated.

## CONCLUSION

13       For the foregoing reasons, ATCA's motion to dismiss or, in the alternative, for summary
14 judgment or, in the further alternative, dismissing plaintiffs' Complaint on the grounds of *forum*
15 *non conveniens*, should be granted.

16 Dated: New York, New York
           June 17, 2016

                                          Respectfully submitted,

                                          CLYDE & CO US LLP

                                          By: */s/ Christopher Carlsen*
                                          Christopher Carlsen
                                          Clyde & CO US LLP
                                          405 Lexington Avenue, 16th Floor
                                          New York, New York 10174
                                          christopher.carlsen@clydeco.us
                                          Telephone: (212) 710-3900

                                          Floyd P. Bienstock
                                          Douglas D. Janicik
                                          Steptoe & Johnson LLP
                                          201 E. Washington Street, Suite 1600
                                          Phoenix, Arizona 85004-2382
                                          fbienstock@steptoe.com
                                          djanicik@steptoe.com
                                          Telephone: (602) 257-5200

                                          Attorneys for Defendant Airline Training
                                          Center Arizona, Inc.

**NOTICE OF CERTIFICATION OF COUNSEL**

I hereby certify that pursuant to this Court's Order dated April 14, 2016, I conferred with counsel for plaintiffs to determine whether an amendment could cure what ATCA maintains is their deficient pleading, and we were unable to agree that the pleading is curable by a permissible amendment.

*/s/ Christopher Carlsen*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 17, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

KREINDLER & KREINDLER LLP
Francis G. Fleming, Esq.
Brian J. Alexander, Esq.
Marc S. Moller, Esq.
750 Third Avenue
New York, New York 10017
Telephone:  (212) 687-8181
Facsimile:  (212) 972-9432
Email: ffleming@kreindler.com
        balexander@kreindler.com
        mmoller@kreindler.com

                                */s/ Christopher Carlsen*