Floyd P. Bienstock (006299)
Douglas D. Janicik (021522)
STEPTOE & JOHNSON LLP
201 E. Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
fbienstock@steptoe.com
djanicik@steptoe.com
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

Christopher Carlsen (*Pro Hac Vice*)
CLYDE & CO US LLP – New York, NY
405 Lexington Avenue, 16th Floor
New York, New York 10174
christopher.carlsen@clydeco.us
Telephone: (212) 710-3900
Facsimile: (212) 710-3950

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Bandres Oto and Elisa Lopez-Belio, individually, and on behalf of all eligible beneficiaries of claims arising from the wrongful death of Marina Bandres Lopez-Belio, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Airline Training Center Arizona, Inc.,<br><br>Defendant. | Case No. 2:16-cv-01027-DJH<br><br>DEFENDANT AIRLINE TRAINING CENTER ARIZONA, INC.'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO LRCiv. 56.1 |

**The Flight Training Provided to Andreas Lubitz, the Co-Pilot of Germanwings Flight No. 4U9525**

1.  ATCA operates a flight training school in Arizona where it teaches student pilots the basic skills needed to fly small, single engine, four-seat aircraft.  Declaration of Matthias Kippenberg dated June 15, 2016, ¶ 5 ("Kippenberg Decl., ¶ __").

2.  ATCA does not teach students how to fly commercial jetliners.  Kippenberg Decl. ¶ 19.

3. ATCA does not provide all of the instruction and training needed to become a commercial airline pilot. Kippenberg Decl. ¶¶ 14-20.

4. Lufthansa Flight Training GmbH ("LFT") operates a commercial pilot training school in Bremen, Germany. Kippenberg Decl., ¶ 9.

5. Andreas Lubitz ("Lubitz"), the co-pilot of Germanwings Flight No. 4U9525 referred to in plaintiffs' Complaint, was a student in the LFT commercial pilot training school. Kippenberg Decl., ¶ 26.

6. The course of instruction to become a commercial airline pilot lasts approximately 26 months and involves: (1) theoretical classroom instruction, (2) practical instruction of basic flying skills conducted in small, general aviation aircraft, (3) simulator training, and (4) practical instruction in more advanced multi-engine aircraft. Kippenberg Decl. ¶¶ 15-16.

7. LFT contracts with ATCA to provide its students the practical instruction of basic flying skills in small aircraft. Kippenberg Decl., ¶¶ 5, 6, 21-23.

8. The course of instruction at ATCA lasts approximately four and one-half months. Kippenberg Decl., ¶ 20.

9. Before arriving at ATCA, LFT's students must complete the theoretical classroom instruction which lasts approximately one year. Kippenberg Decl., ¶ 24.

10. After the students finish the ATCA portion of their training, they return to LFT to compete its commercial pilot training program. Kippenberg Decl. ¶ 24.

11. Lubitz attended ATCA by virtue of his participation in the LFT pilot training program. Kippenberg Decl., ¶ 26.

12. Lubitz began his initial classroom training at LFT in September 2008. Kippenberg Decl., ¶ 36. *See also* Final Accident Report prepared by the Bureau d'Enquetes et d'Analyses, p. 84 ("Final Report"). Copies of the relevant portions of the Final Report are attached as Exhibit "A" to the Kippenberg Declaration.

13. Shortly after Lubitz started his training, he experienced depression and interrupted his training to obtain treatment. Kippenberg Decl. ¶36. *See also* Final Report,

2

1  pp. 8, 86, and Documents from the FAA Website attached as Exhibit "B" to the Kippenberg
2  Declaration ("FAA Documents").

3      14.    Lubitz was treated for approximately ten months, from January to October,
4  2009.  Kippenberg Decl. ¶ 44.  *See also* Final Report, pp. 8, 86, and FAA Documents.

5      15.    When Lubitz' treatment was completed, his doctors opined that the treatment
6  had been successful, and that his depression was in "full remission."  Kippenberg Decl. ¶ 44;
7  FAA Documents.

8      16.    After Lubitz completed his initial training at LFT, he attended and completed
9  the course at ATCA.  Kippenberg Decl. ¶ 24, 77.

10      17.    Lubitz attended the course at ATCA from November 3, 2010 to February 28,
11  2011.  Kippenberg Decl. ¶ 66.

12      18.    Lubitz' training at ATCA started more than one year after the successful
13  completion of his treatment for depression in Germany.  Kippenberg Decl. ¶¶ 66 and FAA
14  Documents.

15      **ATCA did not Know About Lubitz' Mental Health Issues**

16      19.    Prior to the crash of Germanwings Flight No. 4U9525 on March 24, 2015 (the
17  "Crash"), ATCA did not know about Lubitz' history of depression.  Kippenberg Decl. ¶¶ 67-
18  71.

19      20.    Prior to the Crash, ATCA did not know that Lubitz had been treated for his
20  depression.  Kippenberg Decl. ¶ 67-71.

21      21.    Prior to the Crash, ATCA did not know that Lubitz had interrupted his training
22  at LFT to seek treatment for his depression.  Kippenberg Decl. ¶ 67-71.

23      22.    During the time Lubitz attended ATCA, he never displayed any behavior, and
24  never engaged in any conduct, that in any way caused any person employed by ATCA to
25  suspect that he was experiencing, or had in the past experienced, depression or any other
26  mental illness or medical condition.  Kippenberg Decl. ¶¶ 72-76.

27
28

23. No person employed by ATCA ever questioned Lubitz' mental stability, or determined that he was not fit to undergo pilot training or to fly an aircraft. Kippenberg Decl. ¶¶ 72-76.

24. Lubitz successfully completed his training at ATCA without incident. Kippenberg Decl. ¶ 76.

25. ATCA never had any further contact with Lubitz after he left ATCA in February 2011. Kippenberg Decl. ¶ 77.

**The German Government Allowed Lubitz to Undergo Pilot Training With Knowledge of his History of Depression**

26. The government entity in Germany that regulates the training and licensing of commercial airline pilots is the Luftfahrt-Bundesamt ("LBA"). Kippenberg Decl. ¶ 2, 30, 33.

27. The LBA is the German equivalent of the United States Federal Aviation Administration ("FAA"). Kippenberg Decl. ¶ 2.

28. As a condition of Lubitz' participation in the LFT commercial pilot training program, the LBA required that he maintain a valid Class 1 Medical Certificate during the entire period of his training – including the time he was at ATCA. Kippenberg Decl. ¶ 30.

29. ATCA did not impose on Lubitz the requirement that he possess a valid Class 1 Medical Certificate. That requirement was imposed on him by the LBA. Kippenburg Decl., ¶¶ 30, 33.

30. The Class 1 Medical Certificate is issued after the individual passes a medical examination conducted by a licensed aero-medical examiner ("AME"). An AME is a licensed physician who has been authorized by the LBA to conduct the examinations required to obtain a Class 1 Medical Certificate on behalf of the LBA. Kippenberg Decl. ¶ 31.

31. When the Class 1 Medical Certificate is issued to an individual, it means that the AME has determined that the individual is medically qualified to participate in the pilot training program and operate an aircraft. Kippenberg Decl. ¶ 31.

32. ATCA has no involvement in the process by which students obtain their Class 1 Medical Certificates.  Kippenberg Decl. ¶ 31.

33. The Class 1 Medical Certificate is valid for a period of one year for individuals who are under age 40.  Accordingly, for a student such as Lubitz, who was under age 40, the certificate must be renewed annually during training that lasts more than one year. Kippenberg Decl. ¶ 32.

34. In 2009, after Lubitz completed the treatment for his depression, he applied for re-validation of his Class 1 Medical Certificate, which had expired.  Because Lubitz disclosed his hospitalization on his medical certificate application form, the AME who examined him on behalf of the LBA investigated his medical history and treatment for depression.  With full knowledge of that medical history, the AME, on behalf of the LBA, then re-issued to Lubitz his Class 1 Medical Certificate with a waiver stating that it would become invalid if he suffered a recurrence of his depression.  Kippenberg Decl. ¶ 35-37, and Final Report, pp. 84-85.

35. Between 2010 and the date of the crash in 2015, Lubitz' Class 1 Medical Certificate was renewed annually – and each time the AME who examined him was "aware of the waiver and [was] informed of his medical history of depression" and determined that Lubitz was "fit to fly."  Kippenberg Decl. ¶ 36, and Final Report, p. 85.

36. The LBA determined that Lubitz' history of depression and related treatment did not disqualify him from participating in the pilot training courses at LFT or at ATCA. Kippenberg Decl. ¶¶ 36-37 and Final Report, pp. 84-85.

37. The LBA, with knowledge of Lubitz' history of depression and treatment, authorized him to attend the pilot training courses at LFT and ATCA.  Kippenberg Decl. ¶¶ 36-37 and Final Report, pp. 84-85.

38. The notation "FRA 091/09 –REV" contained on Lubitz' Class 1 Medical Certificate was designed to alert the AME conducting his annual examination in connection with the renewal of his certificate that Lubitz had an underlying medical condition that had to be checked by the AME to ensure that the condition had not, since his last examination,

5

progressed to the point where it rendered Lubitz unqualified medically.  Kippenberg Decl. ¶ 56.

39. The notation "FRA 091/09 –REV" contained on Lubitz' Class 1 Medical Certificate is a generic reference designed simply to alert the AME to the fact that an underlying condition exists.  The notation is not specific to any particular condition, and so it does not in any way indicate the type of condition the certificate holder has.  For example, the same notation could refer to high blood pressure, or an eyesight issue.  Kippenburg Decl., ¶ 56.

40. The notation on Lubitz' Class 1 Medical Certificate did not in any way indicate that his underlying condition was a history of depression, or any other mental health issue.  It simply indicated that there was "a condition" that needed to be checked by the AME.  Kippenburg Decl., ¶¶ 56, 57, 59.

41. When the AME sees the notation, he or she gains access to the holder's private medical records in order to determine what the condition is, and whether it has progressed since the last examination.  Kippenburg Decl., ¶ 57.

42. The access to the certificate holder's private medical files is tightly controlled and access is limited to qualified AMEs.  Kippenburg Decl., ¶ 57.

43. ATCA would not have been able to gain access to Lubitz' medical records even if it had sought to do so.  Kippenburg Decl., ¶ 57.

44. The fact that Lubitz' Class 1 Medical Certificate contained this notation meant that whatever the underlying condition was, the AME and the LBA were aware of the condition and had determined at the last annual examination that the holder was medically qualified to undergo flight training, and to operate an aircraft.  Kippenburg Decl., ¶ 58.

45. The fact that Lubitz had an underlying condition that had to be monitored by an AME into the future did not in any way mean that he was not currently medically qualified to participate in flight training, or to fly an aircraft.  Kippenburg Decl., ¶¶ 58, 59.

6

**The German Government Issued Lubitz his Commercial Pilot's License, and Allowed him to Fly Commercial Aircraft, with Knowledge of his Depression**

46. The LBA also requires that a pilot maintain a valid and current Class 1 Medical Certificate as a condition of maintaining a German commercial pilot's license. These medical certificates must be renewed annually in order to maintain a valid commercial pilot's license. Kippenberg Decl. ¶ 96.

47. Lubitz renewed his Class 1 Medical Certificate every year from July 2009 through the date of the crash in March 2015. Kippenberg Decl. ¶ 97 and Final Report, p. 17.

48. The LBA authorized Lubitz to maintain his commercial pilot's license, and to operate commercial aircraft, with full knowledge of his history of depression and treatment. Kippenberg Decl. ¶ 97 and Final report, p. 17.

**The FAA Authorized Lubitz to Attend ATCA With Knowledge of his Depression**

49. The FAA requires individuals undergoing pilot training in the United States to obtain and maintain a valid Medical Certificate Third Class and Student Pilot Certificate issued by the FAA ("FAA Medical Certificate"). Kippenberg Decl. ¶ 38.

50. ATCA did not impose on Lubitz the requirement that he possess a valid FAA Medical Certificate. That requirement was imposed on him by the FAA. Kippenburg Decl., ¶¶ 38, 41.

51. In order to obtain an FAA Medical Certificate, the student must pass an aero-medical examination conducted by a licensed AME authorized to conduct the examination on behalf of the FAA. Kippenberg Decl. ¶ 39.

52. When the FAA Medical Certificate is issued, it means that an AME authorized by the FAA has determined that the individual is medically qualified to participate in pilot training and to operate an aircraft. Kippenberg Decl. ¶ 39.

53. The AME who examined Lubitz in connection with his application for his FAA Medical Certificate reported to the FAA on June 18, 2010, that while in Germany Lubitz had suffered "a brief period of reactive depression," had been evaluated and found fit,

7

and was "continuing as a flight student without any further abnormalities." Kippenberg Decl. ¶¶ 43-45, and FAA Documents.

54. In a letter dated July 8, 2010, the FAA advised Lubitz that due to his history of "reactive depression," he was required to submit a report from his treating physician describing his treatment and current status, and confirming that there had been no recurrence of his symptoms since discontinuing his medication. Kippenberg Decl. ¶¶ 43-45 and FAA Documents.

55. In response, one of Lubitz' physicians advised the FAA that "Mr. Lubitz ... was under my psychotherapeutic treatment from January to October 2009. Mr. Lubitz' high motivation and active participation contributed to the successful completion of the treatment, after management of symptoms." Kippenberg Decl. ¶¶ 43-45 and FAA Documents.

56. Lubitz' other physician provided to the FAA a diagnosis of "[s]evere depressive episode without psychotic symptoms in complete remission." Kippenberg Decl. ¶¶ 43-45 and FAA Documents.

57. On July 28, 2010, after receiving these physicians' reports, the FAA advised Lubitz that "[o]ur review of your medical records has established that you are eligible for a third class medical," and issued his FAA Medical Certificate – with full knowledge of his history of depression. Kippenberg Decl. ¶¶ 43-45 and FAA Documents.

58. The FAA determined that Lubitz' history of depression and related treatment did not disqualify him from participating in the pilot training course at ATCA. Kippenberg Decl. ¶ 47 and FAA Documents.

59. The FAA, with knowledge of Lubitz' history of depression and treatment, authorized him to attend pilot training course at ATCA. Kippenberg Decl. ¶¶ 43-45, 47 and FAA Documents.

60. ATCA was not involved in the process by which Lubitz obtained his FAA Medical Certificate, and did not have knowledge of or access to any of the communications between and among Lubitz, Lubitz' physicians, the FAA, or the AME who examined Lubitz on behalf of the FAA. Kippenberg Decl. ¶¶ 40, 46, 60-62.

1  61. ATCA did not know, and could not have known, that the FAA issued a "warning" to Lubitz related to his history of depression.  Kippenberg Decl. ¶¶ 60-62.

 62. ATCA did not know, and could not have known, that the Lubitz allegedly lied about or attempted to conceal from the FAA his history of depression.  Kippenberg Decl. ¶¶ 63-65.

**ATCA Does Not Have Access to, and Does Not Seek, its Students' Medical Records**

 63. Lubitz did not "apply" to ATCA, and no contractual relationship existed between Lubitz and ATCA.  Lubitz received instruction at ATCA by virtue of his pre-existing membership in the LFT training course, which hired ATCA to provide him the small plane flying portion of his overall training.  Accordingly, ATCA did not select Lubitz to attend its course, and did not conduct any qualifying physical or mental examinations of Lubitz.  He was screened and selected by LFT for its pilot training program.  Kippenberg Decl. ¶¶ 21-25.

 64. ATCA had no involvement in Lubtiz' training at LFT, and had no contact with Lubitz before he enrolled at ATCA.  Kippenberg Decl. ¶ 24.

 65. ATCA has no reason to seek, and does not seek or receive from the FAA, the LBA, or from any other person or entity, or otherwise have access to, any of its students' medical records or other information concerning their medical history or current medical status.  Kippenberg Decl. ¶¶ 48, 49, 53, 54.

 66. ATCA does not receive from the FAA, the LBA, or from any other person or entity, or otherwise have access to, the applications or other materials submitted by the student pilots to the FAA or LBA in order to obtain or renew their medical certificates, or any correspondence exchanged between FAA or the LBA, and the students as part of that process.  Kippenberg Decl. ¶¶ 53, 54.

**Lubitz' Activities in the Four Years After he Left ATCA**

 67. When Lubitz left ATCA, he did not have the instruction, training or skills necessary to operate a commercial jetliner.  Kippenberg Decl. ¶ 78.

9

68. After completing his LFT commercial pilot training course, Lubitz was required to and did pass a final written examination, and a "skills test" in which he demonstrated the skills necessary to operate multi-crew commercial aircraft. Kippenberg Decl. ¶ 80.

69. After completing his LFT course, Lubitz also completed commercial aircraft landing training. Kippenberg Decl. ¶ 80.

70. From September 27 to December 23, 2013, Lubitz took and passed his Airbus 320 type rating in Germany, which meant that he successfully completed a course of instruction necessary to fly that model commercial aircraft. Kippenberg Decl. ¶ 82.

71. Lubitz was hired by Germanwings on or about December 4, 2013. Kippenberg Decl. ¶ 84.

72. ATCA never provided any information to Germanwings concerning Lubitz, either before or after Lubitz was hired by Germanwings. Kippenberg Decl. ¶ 90.

73. The LBA issued Lubitz his commercial pilot's license on February 11, 2014 – almost three years after he completed ATCA's course of instruction. Kippenberg Decl. ¶ 81.

74. After being hired by Germanwings, Lubitz underwent six additional months of training provided by Germanwings in order to learn how to fly the A320 model aircraft operated by Germanwings, and to gain experience actually flying with passengers on board. Kippenberg Decl. ¶¶ 83-84.

75. When Lubitz completed this additional training, he was appointed as a "First Officer" and began to regularly fly as a pilot for Germanwings. Kippenberg Decl. ¶¶ 83-84.

76. All of the aircraft operated by Germanwings require two crew members. Accordingly, on every flight operated by Lubitz in the approximately five months between the date he was appointed a First Officer and the Crash on March 24, 2015, he was accompanied in the cockpit by, and interacted with, another, more senior pilot. Kippenberg Decl. ¶ 93.

77. Lubitz' mental state during these flights did not generate any reported concern from the pilots who flew with him. Kippenberg Decl. ¶ 93, and Final report, pp. 85, 95.

**The Recurrence of Lubitz' Mental Problems Starting in December 2015**

78. Lubitz did not suffer any recurrence of his mental health issues during the five years between the date his treatment for depression ended in October 2009, and December 2014. *See generally*, Final Report, p. 8.

79. In December 2014, Lubitz began to show symptoms that could be consistent with a psychotic depressive episode, and his physicians prescribed anti-depressant medication. Final Report, p. 8.

80. In February 2015, a private physician diagnosed Lubitz to be suffering from a psychosomatic disorder and anxiety disorder and referred him to a psychotherapist and a psychiatrist for treatment. Final Report, p. 8.

81. On March 10, 2015, two weeks before the Crash, Lubitz' physician diagnosed him as suffering from a possible psychosis and recommended that he undergo psychiatric hospital treatment. Final Report, p. 8.

82. Neither Lubitz nor his treating physicians disclosed his medical condition or treatment to the LBA, Germanwings, or ATCA. Final Report, pp. 8, 95.

83. On March 24, 2015, during Flight No. 4U9525, Lubitz locked his co-pilot out of the cockpit, and intentionally flew the plane into the ground. Complaint, ¶ 5; Final Report, pp. 8, 86.

84. Germanwings is a corporate entity organized and existing under the laws of Germany, with its principal place of business located in Cologne, Germany. Kippenberg Decl. ¶ 85.

85. ATCA did not, and did not have the authority or power to, exercise any supervision or control over Lubitz after he left ATCA in February 2011. Kippenberg Decl. ¶ 94.

86. No contractual or other relationship ever existed between ATCA and any of the passengers on board Germanwings Flight No. 4U9525. Kippenberg Decl. ¶ 95.

**The *Forum Non Conveniens* Motion**

87. Plaintiffs will be able to maintain an action against ATCA in the courts of Germany for their claims arising out of the Crash. Declaration of Prof. Fr. Ansgar Staudinger dated June 15, 2016, ¶ 7, submitted in support of ATCA's motion (Staudinger Decl., ¶ __").

88. Plaintiffs will be able to maintain an action against Germanwings in the courts of Germany for their claims arising out of the Crash. Staudinger Decl., ¶ 9.

89. German law provides plaintiffs a cause of action for damages, subject to proof, against ATCA for their claims arising out of the Crash. Staudinger Decl., ¶¶ 10, 14, 15.

90. German law provides plaintiffs a cause of action for damages, subject to proof, against Germanwings for their claims arising out of the Crash. Staudinger Decl., ¶¶ 13-15.

91. Germanwings has agreed not to contest liability for full compensatory damages under the applicable law with respect to the claims involving the deaths of plaintiffs' decedents. *See* email letter from Bach Langheld Dallmayr counsel for Germanwings in Germany, to plaintiffs' counsel dated June 15, 2016, a true and correct copy of which is attached hereto as Exhibit "A."

92. None of plaintiffs' decedents were citizens of the United States. *See* email stipulation from plaintiffs' counsel to ATCA's counsel dated June 15, 2016, a true and correct copy of which is attached hereto as Exhibit "B." *See also* passenger chart attached to email letter, Exhibit "A" hereto.

Dated: New York, New York
June 17, 2016

Respectfully submitted,

CLYDE & CO US LLP

By: */s/ Christopher Carlsen*
Christopher Carlsen
Clyde & CO US LLP
405 Lexington Avenue, 16th Floor
New York, New York 10174
christopher.carlsen@clydeco.us
Telephone: (212) 710-3900
Facsimile: (212) 710-3950

Floyd P. Bienstock
Douglas D. Janicik
Steptoe & Johnson LLP
201 E. Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
fbienstock@steptoe.com
djanicik@steptoe.com
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

Attorneys for Defendant Airline Training Center Arizona, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

KREINDLER & KREINDLER LLP
Francis G. Fleming, Esq.
Brian J. Alexander, Esq.
Marc S. Moller, Esq.
750 Third Avenue
New York, New York 10017
Telephone:  (212) 687-8181
Facsimile:  (212) 972-9432
Email: ffleming@kreindler.com
       balexander@kreindler.com
       mmoller@kreindler.com

/s/ Christopher Carlsen