Floyd P. Bienstock (006299)
Douglas D. Janicik (021522)
STEPTOE & JOHNSON LLP
201 E. Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
fbienstock@steptoe.com
djanicik@steptoe.com
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

Christopher Carlsen (*Pro Hac Vice*)
CLYDE & CO US LLP – New York, NY
405 Lexington Avenue, 16th Floor
New York, New York 10174
christopher.carlsen@clydeco.us
Telephone: (212) 710-3900
Facsimile: (212) 710-3950

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Bandres Oto and Elisa Lopez-Belio, individually, and on behalf of all eligible beneficiaries of claims arising from the wrongful death of Marina Bandres Lopez-Belio, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Airline Training Center Arizona, Inc.,<br><br>Defendant. | Case No. CV-01027-PHX-DJH |

**DECLARATION OF MATTHIAS KIPPENBERG IN SUPPORT OF DEFENDANT AIRLINE TRAINING CENTER ARIZONA, INC.'S MOTION TO DISMISS COMPLAINT**

I, Matthias Kippenberg, hereby declare as follows:

1. I am employed as the President and Chief Executive Officer of defendant Airline Training Center Arizona, Inc. ("ATCA"). I have held this position since January 2002. I am fully familiar with the corporate structure and business operations of ATCA, and I have personal knowledge of the facts and matters set forth in this Declaration.

2. I am a licensed commercial pilot and hold an Air Transport Pilot License issued by the German civil aviation authority, the Luftfahrt-Bundesamt ("LBA"). The LBA is the German equivalent of the United States Federal Aviation Administration ("FAA"). I previously worked for 30 years as a pilot for the German commercial airline Deutsche Lufthansa Aktiengesellschaft ("Lufthansa").

3. I have read the Complaint filed by Manuel Bandres Oto, *et al*, in this litigation (the "Complaint"). I submit this Declaration in support of ATCA's motion seeking to dismiss the Complaint.

## THE FLIGHT SCHOOL OPERATED BY AIRLINE TRAINING CENTER ARIZONA, INC.

4. ATCA is a corporate entity organized and existing under the laws of Arizona, with its principal place of business located in Goodyear, Arizona. ATCA does not conduct any business activities outside of Arizona.

5. ATCA operates a flight training school in Arizona where it teaches student pilots the basic skills needed to fly small, single engine, four-seat aircraft. ATCA does not provide its training and instruction to members of the general public. Its students consist exclusively of individuals who are enrolled in non-U.S. based commercial pilot training programs operated by, or associated with, European and Japanese commercial airlines, including Lufthansa. ATCA also provides this same training to members of the German Air Force.

6. One of the commercial pilot training programs that sends its students to ATCA for training is Lufthansa Flight Training GmbH ("LFT").

7. ATCA is a wholly owned subsidiary of LFT.

8. LFT is a corporate entity organized and existing under the laws of Germany, with its headquarters and principal place of business located in Frankfurt, Germany.

9. LFT operates flight training facilities in Bremen, Germany and other locations outside of the United States. LFT does not conduct any business operations in the United States.

2

10. ATCA and LFT are separate and independent corporate entities and are, and at all times have been, operated as such.

11. LFT is a wholly owned subsidiary of Lufthansa. Lufthansa is a corporate entity organized and existing under the laws of Germany with its headquarters and principal place of business located in Cologne, Germany.

12. ATCA and Lufthansa are separate and independent corporate entities and are, and at all times have been, operated as such.

13. ATCA operates its school pursuant to authority granted to it by the FAA. The regulations applicable to the operation of a pilot school in the United States are set forth in 14 C.F.R. Part 141 (Pilot Schools). The regulations applicable to the instructors who provide training to student pilots are set forth in 14 C.F.R. Part 61 (Certification: Pilots, Flight Instructors, and Ground Instructors). ATCA is, and at all times has been, in full compliance with all of the requirements set forth in 14 C.F.R. Parts 61 and 141.

## ATCA DOES NOT OPERATE AN "AIRLINE FLIGHT TRAINING PROGRAM" AND DOES NOT TEACH STUDENTS HOW TO FLY COMMERCIAL JETLINERS

14. I am aware of plaintiffs' allegation that ATCA operates an "airline flight training program." *See, e.g.*, Complaint, ¶ 102. To the extent this allegation is intended to assert or imply that ATCA provides all of the instruction and training necessary for an individual to become a commercial airline pilot, or provides the instruction and training necessary to fly commercial jetliners, it is not true, and mischaracterizes the training and instruction provided by ATCA.

15. An individual seeking to become commercial airline pilot must complete a commercial pilot training program. The overall period of training and instruction required to obtain the skills necessary to obtain a commercial pilot's license in such a program usually involves a total of approximately 26 months of full-time training.

16. The 26 months of training consists of (1) theoretical classroom instruction, (2) practical instruction of basic flying skills conducted in small, general aviation aircraft, (3) simulator training, and (4) practical instruction in more advanced multi-engine aircraft.

17. After a student pilot completes this training, and obtains a commercial pilot's license from the applicable government authority, he or she then must be hired by a commercial airline. After being hired by an airline, the individual then undergoes several additional months of on-the-job training as a Second Officer under the supervision and command of an experienced training Captain learning to fly the aircraft operated by that airline.

18. ATCA does not operate a commercial pilot training program. It operates a pilot school where it provides a discrete segment of the overall training involved in such a program.

19. The instruction provided by ATCA is limited to teaching students the basic skills necessary to fly a small plane. ATCA does not teach students how to fly commercial jetliners.

20. The small-plane flying instruction provided by ATCA lasts approximately four and one-half months.

## ATCA DOES NOT "SELECT" THE STUDENTS WHO ATTEND ATCA

21. I am aware of plaintiffs' allegation that the students who receive training and instruction at ATCA "apply" for admission to ATCA, and that ATCA "selects and screens" the students before they are "admitted" to ATCA. *See, e.g.*, Complaint, ¶¶ 6, 105 and 106. These allegations are not true, and mischaracterize the relationship between ACTA and the students who attend ATCA, and the process by which they are enrolled for training at ATCA.

22. None of the students "apply" to attend ATCA, and no contractual relationship exists between ATCA and the students. The students who receive instruction at ATCA do so

4

by virtue of their pre-existing membership in a non-U.S. based commercial pilot training program, and a contractual agreement between that pilot training program and ATCA.

23. The commercial pilot training programs that send their students to ATCA either contract directly with ATCA, or contract with LFT, which in turn contacts with ATCA, to provide to their students the required practical instruction in small, single engine aircraft. Accordingly, all students (other than the military trainees) who attend ATCA are participants in a commercial airline pilot training program designed to provide them all of the training necessary to qualify as a commercial airline pilot. These commercial airline pilot training programs in turn hire ATCA to provide the "basic flying skills" portion of that overall training to their students.

24. Before starting their training at ATCA, all of the students have successfully completed the initial phase of their theoretical classroom instruction provided by their respective non-U.S. based commercial pilot training programs. Once the students complete their four and one-half month course of instruction at ATCA, they return to their respective programs to complete their course of study. ATCA has no involvement in the students' training before they arrive at ATCA, or their continued training after they leave ATCA.

25. Because the students do not apply for admission to ATCA, and ATCA does not select which students attend ATCA, it does not engage in any "screening" or "selection" of the students before they enroll at ATCA. All of the students who receive instruction at ATCA have been screened, selected, and accepted by their respective non-U.S. based pilot training programs long before they arrive at ATCA. ATCA has no involvement in that screening, selection or admission process.

### THE REQUIREMENTS FOR ENTRANCE INTO THE LFT TRAINING PROGRAM

26. Andreas Lubitz ("Lubitz"), the co-pilot of Germanwings Flight No. 4U9525 referred to in the Complaint, attended ATCA by virtue of his participation in the LFT pilot training program.

27. I graduated from the Lufthansa pilot training program, which is now operated by LFT, and am familiar with the application process as well as the requirements of the program itself. As a result of my experience at ATCA, I also am familiar with the application process and requirements of the other flight training programs that send students to ATCA for instruction. The processes and requirements are very similar at all of the programs.

28. The application process for entrance into the LFT program involves, *inter alia*, a rigorous set of personal interviews, practical exercises, and written examinations. All of these activities are conducted in Germany. ACTA does not participate in any of these activities, and has no involvement in deciding which students are admitted to the LFT pilot training program.

29. The governments of the countries where the ATCA-affiliated commercial pilot training programs are located require that students undergoing training to become commercial airline pilots obtain a government-issued medical certificate certifying that they are medically qualified to undergo the training, and to fly aircraft. A valid medical certificate must be maintained during the entire period of training. Accordingly, the selection and screening process employed by the commercial pilot training programs that send students to ATCA includes ensuring that all of the students possess valid medical certificates before they start, and throughout the period of, their training. ATCA is not in any way involved in the process by which the students obtain these medical certificates.

30. In Germany, the government entity that controls the issuance of the student pilot medical certificates is the LBA. The LBA requires that a student pilot participating in a pilot training program in Germany and who intends to obtain a commercial pilot's license issued by the LBA must obtain and maintain a current Class 1 Medical Certificate issued by the LBA during the entire period of his training, including the time the student is receiving instruction at ATCA. Accordingly, during the entire period of Lubitz' participation in the LFT pilot training program, including the time he attended ATCA, he was required to maintain a current Class 1 Medical Certificate issued by the LBA.

31. The Class 1 Medical Certificate is issued only after the individual passes a medical examination conducted by a licensed aero-medical examiner ("AME"). An AME is a licensed physician who has been authorized by the LBA to conduct the examinations required to obtain a Class 1 Medical Certificate on behalf of the LBA. When the Class 1 Medical Certificate is issued to an individual, it means that the AME has determined that the individual is medically qualified to participate in the pilot training program and operate an aircraft. ATCA has no involvement in the process by which the students obtain these Class 1 Medical Certificates.

32. The Class 1 Medical Certificate is valid for a period of one year for individuals who are under age 40. For individuals age 40 and older, it is valid for six months. Accordingly, for a student such as Lubitz, who was under age 40, the certificate must be renewed annually during training that lasts more than one year. ATCA has no involvement in the process by which the students obtain the renewal of their Class 1 Medical Certificates.

33. Because the LBA requires that students who obtain a German commercial pilot's license must have maintained a current and valid Class 1 Medical Certificate during their entire course of training, a student such as Lubitz is required to provide proof to ATCA that he possesses a valid and current Class 1 Medical Certificate before he starts his instruction at ATCA.

34. Lubitz provided proof to ATCA that he possessed a valid and current Class 1 Medical Certificate before he started his instruction at ATCA. As noted above, Lubitz' possession of the Class 1 Medical Certificate meant that an AME had examined him and determined that he was medically qualified to participate in a pilot training program and to operate an aircraft.

**THE LBA ISSUED LUBITZ HIS CLASS 1 MEDICAL CERTIFICATE, AND AUTHORIZED HIM TO UNDERGO PILOT TRAINING, WITH FULL KNOWLEDGE OF HIS HISTORY OF DEPRESSION**

35. I am aware that the Bureau d'Enquetes et d'Analyses of the French Government conducted the official investigation of the crash involving Germanwings Flight No. 4U9525,

and I have reviewed its Final Report which is available on its website at https://www.bea.aero/no_cache/en/investigation-reports/accessing-reports/. Attached hereto as Exhibit "A" is a true and correct copy of relevant portions of the Final Report.

36. Based upon the information contained in the Final Report, I am aware that in November 2008, during his initial training at LFT, Lubitz began to experience depression and interrupted his training to seek medical treatment. *See* Final Report, p. 84. In 2009, when his treatment was completed, Lubitz applied for re-validation of his Class 1 Medical Certificate. Because Lubitz disclosed his hospitalization on his medical certificate application form, the AME who examined him on behalf of the LBA investigated his medical history and treatment for depression. With full knowledge of that medical history, the AME, on behalf of the LBA, then re-issued to Lubitz his Class 1 Medical Certificate with a waiver stating that it would become invalid if he suffered a recurrence of his depression. *Id*. According to the Final Report, between 2010 and the date of the crash in 2015, Lubitz' Class 1 Medical Certificate was renewed annually – and each time the AME who examined him was "aware of the waiver and [was] informed of his medical history of depression" and determined that Lubitz was "fit to fly." *Id*., p. 85.

37. Accordingly, the LBA issued to Lubitz his Class 1 Medical Certificate, which authorized him to participate in the LFT commercial pilot training program, with knowledge of his history of depression and treatment

**THE U.S. FEDERAL AVIATION ADMINISTRATION REQUIRES THAT STUDENT PILOTS OBTAIN AN FAA ISSUED MEDICAL CERTIFICATE FOR THEIR ATCA TRAINING**

38. The FAA requires that a student pilot receiving instruction in the United States possess a valid Medical Certificate Third Class and Student Pilot Certificate issued by the FAA ("FAA Medical Certificate"). Accordingly, every student who attends ATCA also must possess a valid FAA Medical Certificate before he or she can begin training at ATCA.

39. In order to obtain an FAA Medical Certificate, the student must pass an aero-medical examination conducted by a licensed AME authorized to conduct the examination

on behalf of the FAA. Similar to the German Class 1 Medical Certificate, when the FAA Medical Certificate is issued, it means that an AME authorized by the FAA has determined that the individual is medically qualified to participate in pilot training and to operate an aircraft.

40. No employee of ATCA is qualified or authorized to conduct an aero-medical exam, and ATCA is not in any way involved in the process by which the students apply for and obtain their FAA Medical Certificates. The students obtain their FAA Medical Certificates directly from the FAA before they arrive at ATCA.

41. Before the students begin their instruction at ATCA, they are required to provide proof to ATCA that they possess a current and valid FAA Medical Certificate as required by the FAA.

42. Lubitz provided proof to ATCA that he possessed a current and valid FAA Medical Certificate before he started his instruction at ATCA. As noted above, Lubitz' possession of the current and valid FAA Medical Certificate meant that a qualified AME examined him and determined that he was medically qualified to participate in pilot training and to operate an aircraft.

### THE FAA ISSUED LUBITZ HIS FAA MEDICAL CERTIFICATE, AND AUTHORIZED HIM TO UNDERGO TRAINING AT ATCA, WITH FULL KNOWLEDGE OF HIS HISTORY OF DEPRESSION

43. I am aware that after the crash, the FAA responded to requests for information concerning Lubitz made by certain news organizations under the Freedom of Information Act ("FOIA"), and that the FAA later posted its responses to those FOIA requests on its public website located at http://www.faa.gov/foia/electronic_reading_room/pilot_records/. Attached hereto as Exhibit "B" are true and correct copies of the documents that are posted on the FAA's website.

44. These documents establish that before the FAA issued to Lubitz his FAA Medical Certificate, it obtained reports from his treating physicians in Germany who advised

1  the FAA that Lubitz underwent treatment for depression, that his treatment had been successful, and that his depression was in "complete remission".

45. Accordingly, the FAA issued to Lubitz his FAA Medical Certificate, which authorized him to undergo flight training at ATCA, with full knowledge of his history of depression and treatment.

46. Prior to the crash, ATCA did not have access to any of the information contained in the Final Report, or in the documents on the FAA's website. However, even if ATCA had access to this information, it would have learned that the LBA, and the FAA - the U.S. Government agency that regulates and controls ATCA's operation of its flight school, had investigated Lubitz' medical history and determined that he was "fit to fly" and undergo pilot training.

47. The FAA's issuance of the FAA Medical Certificate to Lubitz establishes that his history of depression and treatment did not disqualify him from undergoing flight training at ATCA.

## ATCA DOES NOT INVESTIGATE, OR HAVE ACCESS TO, STUDENT PILOT MEDICAL HISTORIES

48. I am aware of plaintiffs' allegation that ATCA's requirement that student pilots such as Lubitz present to ATCA their FAA Medical Certificate, and German Class 1 Medical Certificate, is designed to enable ATCA to investigate the students' medical history and determine whether they have "a disqualifying medical history or current mental or physical condition that would make him or her unsuited to be a commercial airline pilot." *See* Complaint, ¶¶ 105-107. This allegation is not true.

49. ATCA teaches its students the basic skills necessary to fly a small plane. It does not conduct any physical or mental examination of the students, or investigate their medical histories, to determine whether they are medically qualified to receive this instruction. As noted above, every student that comes to ATCA has been examined and certified as medically qualified to undergo pilot training by a licensed aero-medical examiner

authorized to conduct such examinations by the country where that student's pilot training program is located, and by the FAA.

50. ATCA requires that each of its students prove that they possess a valid and current FAA Medical Certificate because it is a requirement for U.S. based flight training imposed by the FAA.

51. ATCA requires that each of its students from the LFT pilot training program prove that they possess a valid and current German Class 1 Medical Certificate because it is a requirement of the students' training imposed by the LBA.

52. The fact that an FAA Medical Certificate, and a German Class 1 Medical Certificate, have been issued to a student pilot such as Lubitz means that a qualified medical professional, who has been designated as an aero-medical examiner to conduct examinations on behalf of the FAA and the LBA, respectively, has examined the student and has determined that he or she is medically qualified to participate in the training to become a pilot, and to fly a plane.

53. ATCA does not receive from the FAA, the LBA, or from any other person or entity, or otherwise have access to, any of its students' medical records or other information concerning their medical history or current medical status. The only information ATCA receives concerning a student's medical qualification is the valid medical certificates themselves, the very existence of which means that qualified and authorized medical professionals have determined that the student is medically qualified to participate in a pilot training program.

54. ATCA similarly does not receive from the FAA, the LBA, or from any other person or entity, or otherwise have access to, the applications or other materials submitted by the student pilots to the FAA or LBA in order to obtain or renew their medical certificates, or any correspondence exchanged between the students and FAA or the LBA, as part of that process.

### ATCA WAS NOT REQUIRED, AND WAS NOT ABLE, TO INVESTIGATE THE ALLEGED NOTATION ON LUBITZ' CLASS 1 MEDICAL CERTIFICATE

55. I am aware of plaintiffs' allegation that the Class 1 Medical Certificate issued to Lubitz had a "special notation/restriction of ['FRA 091/09 – REV'] printed on the certificate itself ... to indicate that his medical certificate would become invalid if there was a relapse or recurrence of his depression", and that this notation should have caused ATCA to investigate the nature of the restriction and Lubitz' medical history. *See* Complaint, ¶¶ 115, 116 and 119. I also am aware of plaintiff's allegation that this notation "was a red flag which put ATCA on notice that Lubitz was a problematic flight training candidate and one who required heightened, continuous and vigilant scrutiny if his mental health and suitability to become a commercial airline pilot." *Id.,* ¶ 126. These allegations are not true, and misleading.

56. As a result of my experience as a commercial airline pilot and holder of a German commercial pilot's license, I am aware that a notation such as this on a Class 1 Medical Certificate is not unusual, and is simply a generic reference designed to alert the AME conducting the certificate holder's next annual medical certificate renewal examination that the holder has a medical condition that must be checked by the AME to ensure that the condition has not progressed to the point where it renders the individual unqualified medically. The notation is not specific to any particular type of medical condition, and so it might refer to, for example, the fact that the individual has high blood pressure, or an eyesight issue.

57. When the AME sees this notation, it prompts him or her to gain access to the holder's private medical records in order to determine the medical condition involved and make the appropriate assessment of the current state of that condition. The access to these private medical records is tightly controlled and limited to qualified AMEs, and ATCA would not in any event even have access to the records.

58. As noted above, the very fact that the medical certificate has been issued means that the holder has been determined to be medically qualified to fly by a licensed

medical professional. A medical certificate issued with a "notation/restriction" such as the one that appeared on Lubitz' certificate means that the AME has determined that the individual is medically qualified to fly - even though he or she has, or has in the past experienced, the underlying medical condition. The fact that the individual may have a condition that needs to be monitored by an AME into the future does not in any way indicate that the individual currently is not medically qualified to participate in training, or to fly.

59. Accordingly, the presence of the notation on Lubitz' Class 1 Medical Certificate would not in any way have "alerted" ATCA to the fact that Lubitz had experienced any mental health issues in the past, or that he needed any special monitoring or surveillance during his training at ATCA. The notation simply meant that the AME had cleared Lubitz to fly with full knowledge of the underlying medical condition.

## ATCA DID NOT KNOW, AND COULD NOT HAVE KNOWN, ABOUT THE "WARNING" ISSUED WITH LUBITZ' FAA MEDICAL CERTIFICATE

60. I am aware of plaintiffs' allegation that the FAA Medical Certificate issued to Lubitz was "issued with a warning relating to his history of 'reactive depression'" which should have caused ATCA to investigate his medical history. *See* Complaint, ¶¶ 117 and 125. This allegation is not true.

61. As an initial matter, ATCA never was provided a copy of, or any information concerning, a "warning" issued by the FAA or any other person or entity with respect to Lubitz.

62. I assume that plaintiffs' reference to the "warning" issued by the FAA is the statement in the letter from the FAA to Lubitz dated July 28, 2010, which is included in the documents posted on the FAA's website and attached hereto as Exhibit "A". As is evident from the face of this letter, it was addressed only to Lubitz, and a copy was sent to Joerg Siedenberg, M.D., the individual listed as the AME on Lubitz' application to the FAA. Neither the FAA, nor any other person or entity, ever provided a copy of this letter, or conveyed any of the information contained in this letter, to ATCA. And, ATCA did not have

access to these documents contained in the FAA's records in any event until the FAA posted them on-line after the crash.

### ATCA DID NOT KNOW, AND COULD NOT HAVE KNOWN, THAT LUBITZ ALLEGEDLY LIED ABOUT AND ATTEMPTED TO CONCEAL HIS HISTORY OF MENTAL DISORDERS

63. I am aware of plaintiffs' allegations that ATCA "knew or should have known that Lubitz intentionally and unlawfully denied and lied about his history of mental disorders" and "knowingly concealed [such disorders] in order to avoid disqualification from ATCA's airline pilot flight training in the U.S." Complaint, ¶¶ 123 and 128. These allegations are not true.

64. As an initial matter, I note that ATCA does not know, and has no way of knowing, whether Lubitz actually engaged in this alleged misconduct. In any event, prior to the crash involving Germanwings Flight 4U9525, ATCA never was advised, and never received any information indicating, that Lubitz had ever experienced depression or any other mental health issues, or that Lubitz had ever attempted to deny, lie about, or conceal, any such mental health issues.

65. I note that included in Exhibit "A" hereto are two copies of a document designated in the lower left hand corner as "FAA Form 8500" which appear to be related to Lubitz' application to the FAA to obtain his FAA Medical Certificate prior to his enrollment in the ATCA training. On one of these forms the box 18m inquiring about mental disorders is checked "no", while the same box on the second copy of this form is checked "yes". In the event these documents form the basis for plaintiffs' allegation that Lubitz "denied, lied about, and attempted to conceal his history of mental disorders," neither the FAA, nor any other person or entity, ever provided copies of these forms, or conveyed any of the information contained therein, to ATCA. And, ATCA did not have access to these forms contained in the FAA's records in any event until they were posted on-line after the crash.

### ATCA DID NOT KNOW THAT LUBITZ SUFFERED FROM, OR WAS TREATED FOR, DEPRESSION OR ANY OTHER MENTAL ILLNESS

66. Lubitz attended his training at ATCA from November 3, 2010 to February 28, 2011.

67. I am aware of plaintiffs' allegations that ATCA knew or should have known that Lubitz had a history of mental illness/depression, interrupted his training at LFT in Germany for treatment, exhibited symptoms of mental illness during his training at ATCA, and that ATCA "questioned his stability." *See, e.g.*, Complaint, ¶¶ 6, 7 and 122. These allegations are not true.

68. ATCA had no involvement in Lubtiz' training at LFT, and had no contact with Lubitz before he enrolled at ATCA.

69. The commercial pilot training programs that send student pilots to ATCA, including LFT, do not provide ATCA copies of, or any information concerning, the students' training records, grades, attendance records, or medical records. Accordingly, even assuming, *arguendo*, that LFT had some knowledge that Lubitz had experienced mental health issues, or that he suspended his training at LFT to receive treatment for those issues, none of that information ever was communicated to ATCA.

70. ATCA teaches its students the basic skills necessary to fly a small plane. It does not conduct any physical or mental examinations of the students, nor does it investigate their medical histories, to determine whether they are medically qualified to receive this instruction. As noted above, every student that comes to ATCA, including Lubitz, has been examined and certified as medically qualified to undergo pilot training by a licensed aero-medical examiner authorized to conduct such examinations by the country where that student's pilot training program is located, and by the FAA.

71. Moreover, because medical records are private and confidential, and protected from disclosure by German law, ATCA would in any event not have been able to gain access to any of Lubitz' German medical records even if it had reason to seek those records.

72. I am familiar with Lubitz' training while at ATCA. Prior to the crash of the Germanwings flight in March 2015, neither I, nor any instructor or employee at ATCA, ever was made aware that Lubtiz was experiencing, or had in the past experienced, depression or any other mental health issues.

73. During the time Lubitz attended ATCA, he never displayed any behavior, and never engaged in any conduct, that in any way caused me or any instructor or other employee of ATCA to suspect that he was experiencing, or had in the past experienced, depression or any other mental health issues.

74. Neither I, nor any instructor or other employee of ATCA, ever questioned Lubitz' mental "stability," or his ability to safely operate an aircraft.

75. Neither I, nor any instructor or other employee of ATCA, ever received any information from any person or entity that indicated that Lubitz was experiencing, or had in the past experienced, depression or any other mental illness or medical condition, while he was attending ATCA.

76. Lubitz successfully completed his training at ATCA without incident.

**LUBITZ' ACTIVITIES DURING THE FOUR YEARS AFTER HE LEFT ATCA**

77. Lubitz completed his instruction at ATCA on February 28, 2011, and returned to Germany to complete the multi-year process of obtaining his commercial pilot's license. ATCA had no further contact with Lubitz after February 2011.

78. When Lubitz left ATCA, he did not have the instruction, training or skills necessary to operate a commercial jetliner.

79. Based upon the information in the Final Report, I am aware that from June 15, 2011 to December 31, 2013, Lubitz worked as a flight attendant for Lufthansa while continuing his commercial pilot training at LFT. *See* Final Report, p. 16. ATCA was not in any way involved in the process by which Lubitz secured this position as a flight attendant, nor was it in any way involved in the continued training he received at LFT during that time.

80. After completing a pilot training course, a student pilot is required to pass a final written examination, and then is required to pass a "skills test" in which he or she must demonstrate the skills necessary to operate multi-crew commercial aircraft. Once that skills test is completed, the individual also must successfully complete aircraft landing training before he or she is issued a Multi-Crew Pilot License (Aircraft)("MPL(A)") by the LBA.

81. The Final Report indicates that Lubitz was issued his MPL(A) on February 11, 2014 – almost three years after he completed ATCA's course of instruction. ATCA was not in any way involved in administering the final written examination, or the skills test, or the landing training to Lubitz, and ATCA did not teach Lubitz how to fly a multi-engine, commercial aircraft.

82. The Final Report indicates that from September 27 to December 23, 2013, Lubitz took and passed his A320 type rating at Lufthansa in Germany. *Id.* When an individual obtains a "type rating," it means that he or she successfully completed a course of instruction necessary to fly a particular model commercial aircraft, and has demonstrated the ability to actually fly that aircraft. The "A320 type rating" means that Lubitz obtained his type rating on the Airbus 320 Model aircraft. ATCA was not in any way involved in providing Lubitz the training necessary to obtain this type rating.

83. Once an individual is hired by a commercial airline, he or she then must undergo training and instruction by that airline in order to learn how to fly the specific model aircraft operated under the Standard Operating Procedures of that airline, as well as to gain experience actually flying within the network of the airline with passengers on board. This type of training and instruction is known as "line flying". During the line flying, the individual is designated as a Second Officer, and is required at all times to fly accompanied by, and under the direct supervision of, an experienced Training Captain who is certified by the LBA to provide this instruction. When this period of line flying is completed, the individual is required to pass a "final check" to demonstrate that he or she possesses the skills necessary to operate the aircraft in the normal crew complement of Captain and First Officer. The individual then is appointed as a First Officer.

84. According to the Final Report, Lubitz joined Germanwings on or about December 4, 2013, and underwent line flying at Germanwings for approximately six months from January 27, 2014 to June 21, 2014. ATCA was not in any way involved in the line flying provided to Lubitz.

85. Germanwings is a corporate entity organized and existing under the laws of Germany, with its principal place of business located in Cologne, Germany.

86. Germanwings does not and never has operated flights to or from the United States, and does not conduct any other business operations in the United States

87. Germanwings is a wholly-owned subsidiary of Lufthansa. ATCA is an indirect, wholly owned subsidiary of Lufthansa (through LFT). At no time did any direct corporate relationship ever exist between ATCA and Germanwings.

88. ATCA and Germanwings are separate and independent corporate entities and are, and at all times have been, operated as such.

89. No contractual relationship ever existed between ATCA and Germanwings, and ATCA was not in any way involved in the process by which Lubitz was hired by Germanwings.

90. ACTA never was asked for, and never provided to Germanwings, any information concerning Lubitz – either before or after Germanwings employed him as a pilot.

91. The Final Report indicates that Lubitz passed his proficiency check ("final check") on June 26, 2014, and was appointed as a First Officer. ATCA was not in any way involved in administering the proficiency check to Lubitz, or his appointment as a First Officer.

92. The Final Report also indicates that Lubitz passed his operator proficiency check on October 28, 2014. An "operator proficiency check" is an annual exercise conducted in a flight simulator in which the pilot has to demonstrate the skills necessary to operate the type of aircraft for which he possesses a type rating and which he actually

operates for the airline. ATCA was not in any way involved in the administration of Lubitz' operator proficiency check.

93. Once an individual is appointed as a First Officer, he or she is permitted to fly commercial aircraft as part of a crew. All of the aircraft operated by Germanwings were multi-crew aircraft, which means that more than one pilot operates the aircraft. Accordingly, on every flight operated by Lubitz in the approximately five months between the date he was appointed a First Officer and date of the crash on March 24, 2015, he was accompanied in the cockpit by, and interacted with, another, more senior pilot. I note that the Final Report indicates that Lubitz' "mental state ... during these flights did not generate any reported concern from the pilots who flew with him." *Id.*, p. 85.

94. ATCA did not, and did not have the authority or power to, exercise any supervision or control over Lubitz after he left ATCA in February 2011.

95. No contractual or other relationship ever existed between ATCA and any of the passengers on board Germanwings Flight No. 4U9525 that crashed on March 24, 2015.

**THE LBA AUTHORIZED LUBITZ TO MAINTAIN HIS COMMERCIAL PILOT'S LICENSE, AND TO OPERATE COMMERCIAL AIRCRAFT, WITH KNOWLEDGE OF HIS HISTORY OF DEPRESSION**

96. In addition to requiring that a student pilot maintain a valid and current Class 1 Medical Certificate during the entire period of his or her training program, the LBA also requires that a pilot possess the same medical certificate as a condition of maintaining a German commercial pilot's license. These medical certificates are valid for a period of only one year for pilots under age 40, and so must be renewed annually in order to maintain a valid commercial pilot's license.

97. Based upon the information in the Final Report, I am aware that Lubitz renewed his Class 1 Medical Certificate every year from July 2009 through the date of the crash in March 2015. *See* Final Report, p. 17. As indicated above, the LBA renewed Lubitz' Class 1 Medical Certificate each year with full knowledge of his medical history.

Accordingly, the LBA authorized Lubitz to maintain his commercial pilot's license, and to operate commercial aircraft, with full knowledge of his history of depression and treatment.

### ATCA'S *FORUM NON CONVENIENS* MOTION TO DISMISS

98. In the event this court grants ATCA's motion to dismiss on the grounds of *forum non conveniens*, and plaintiff thereafter elects to commence an action against ATCA in a court in Germany, ATCA will agree as a condition of such dismissal to voluntarily submit to the jurisdiction of such German court in that action, provided that any such action is commenced by March 24, 2017, and also will agree to make available to plaintiff in Germany, at ATCA's expense, all witnesses and other evidence that ATCA is required to produce by the German court.

I hereby declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2016

_____
Matthias Kippenberg